UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KELLY R. PARTLOW individually and on behalf of others similarly situated,<br><br>     Plaintiff,<br><br>    v.<br><br>JERRY ASHER in his official capacity, as Howard County Sheriff,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. 1:22-cv-01467-TWP-MKK<br>)<br>)<br>)<br>)<br>)<br>) |

**ENTRY ON MOTION TO CERTIFY CLASS AND ORDER
GRANTING LEAVE TO WITHDRAW FILING NO. 75**

This matter is before the Court on a Motion to Certify Federal Rule of Civil Procedure ("FRCP") 23(b)(3) Class Action filed by Plaintiff Kelly R. Partlow ("Partlow") (Filing No. 70). Also pending is Defendant Jerry Asher's ("Asher") Partial Motion for Summary Judgment (Filing No. 75). Partlow initiated this action alleging that Asher, sued in his official capacity as the Howard County Sheriff, has systematically underpaid wages and overtime wages to Partlow and similarly situated hourly paid workers. Partlow seeks class certification for unpaid roll call wage claims arising under the Indiana Wage Payment Statute, Ind. Code § 22-2-5-1 *et seq.*, for an overall class of approximately one hundred putative corrections officer class members for hours spent working during mandatory roll calls at the county jail. *Id.*; *see* Filing No. 71 at 1. For the reasons set forth below, Partlow's Motion to Certify the unpaid roll call time class is **granted,** and Asher is **granted leave to withdraw without prejudice**, the pending Motion for Partial Summary Judgment.

## I. BACKGROUND

Prior to July 11, 2021, the Howard County Sheriff's Office (the "Sheriff's Office") scheduled corrections officers "on a 4-days on/2-days off rotation such that they were scheduled a maximum of five 8-hour shifts every 7-day work period," a system under which they "received a paid 45-minute meal break." Filing No. 72-1 at 3, ¶ 5. Howard County's "Personnel Policies Handbook", which is dated November 1, 2020, and attached to Partlow's class certification briefing, indicates that eligible safety employees shall be paid at a rate of one and one-half times the hourly wage for all approved hours worked in excess of forty in a normal workweek (*see* Filing No. 71-21 at 3).

From July 11, 2021 to July 8, 2023, corrections officers "were scheduled for seven 12-hour shifts every 14-day work period" (Filing No. 72-1 at 3, ¶ 5; *see, e.g.*, Filing No. 71-10 at 22 (containing seven shifts and detailing that "Total Hours Clocked In" for April 17–30, 2022, started at "6:00" and ended at "18:00")). Each shift was either from 6:00 a.m. to 6:00 p.m., or vice versa (*see* Filing No. 71-6 at 2), and "was calculated to have 11.25 hours of paid working time and 45-minutes of an unpaid meal break." Filing No. 72-1 at 3, ¶ 5.

Importantly, for purposes of this suit, each "8 and 12 hour shift length[] . . [did] not include a 15-minute roll call meeting that Corrections Officers were required to attend before the 'official' start of their shifts." *Id.*, ¶ 6; *see also* Filing No. 71-6 at 2, 6. "This means that the shifts were really 8.25 and 12.25 hours in length, because attendance at the roll call meeting was mandatory." Filing No. 72-1 at 3, ¶6.

As part of a "rever[sion] to 8.25 hour shifts" starting on July 9, 2023, the Sheriff's Office "issued a new Time Keeping/Payroll policy," Filing No. 72-1 at 4, ¶8, which stated that the "standard shift for correctional staff is 8.25 hours, which includes a 15-minute pre-shift roll call meeting." *Id.* at 7. The same newly-issued "Time Keeping/Payroll" policy clarified that the pre-

shift roll call meeting allowed for proper communication between shifts and for supervisors to properly communicate to staff. *Id.* The policy further indicated that full-time correctional staff would receive premium pay for work beyond their normally scheduled 8.25-hour shift in a single workday, and part-time correctional staff were to receive paid premium pay for "any approved time worked above 40 hours in a one-week period." *Id.*

Partlow contends, "[a]ttending the roll call 15 minutes prior to [her] shift is actual work and is [her] first principal work activity each work day. All time after that first principal activity is compensable work time until [she] perform[s] [her] final principal work activity at the end of the work shift." (Filing No. 71-3 at 4.)

On July 22, 2022, Partlow initiated this combined collective action and class action suit, pursuant to the Fair Labor Standards Act ("FLSA"), and the Indiana Wage Payment Statute ("IWPS") (Filing No. 1). She seeks damages for unpaid wages, and alleges that:

> Despite the fact that the "Roll Call" meetings [we]re mandatory, believed to be recorded on the Howard County Jail time clock, and conducted by the Jail Commander or another Howard County Jail supervisor, Asher ha[d] willfully refused to pay Partlow and its other Howard County Jail employees for this fifteen-minute period of time each shift. At a very minimum, Asher fail[ed] to pay each employee for 1.75 compensable and recorded work hours every two weeks and fail[ed] to pay each employee for 1.0 overtime hours in one of every two weeks.

(Filing No. 1 at 2). Both Partlow's FLSA claim and IWPS claim draw partially on the same factual claim (corrections officers were not paid for mandatory roll call time) and legal theory (failure to pay compensable wages in full violates class and collective members' rights). *See id.* at 12, ¶ 44 (FLSA claim); 13, ¶ 50 (IWPS claim).

On February 16, 2023, the parties stipulated to conditional certification of a collective action class of "[a]ll current and former Corrections Officers Employed at the Howard County Jail who worked during the period of February 16, 2021 to the present" (Filing No. 32 at 1), which the Court granted, but with respect to a period that began a day earlier (*see* Filing No. 33 at 1). So

3

far, eighteen individuals other than Partlow have filed consents to opt into the FLSA action, including two individuals who filed consent forms prior to the grant of conditional certification (*see* Filing No. 55; *see also* Filing No. 13; Filing No. 14).

Before the Court is Partlow's Motion to Certify FRCP 23(b)(3) Class Action,[1] which seeks certification of a class of current and former corrections officers under the IWPS. Having completed some fact discovery, Partlow represents that "at least 94 different correction[s] officer employees worked for it from July 22, 2020 to approximately March 1, 2023" (Filing No. 71 at 3) (citing Filing No. 71-1)), a number which she believes has since increased. *See id.*

## II. JURISDICTION

As a preliminary matter, the Court will address jurisdictional considerations. Notwithstanding his clear admission in answering Partlow's complaint that "the Court has jurisdiction over Plaintiff's claims[,]" (Filing No. 12 at 15), Asher raises two jurisdictional arguments in opposition to class certification: (1) the Court should decline to exercise supplemental jurisdiction because it raises a novel or complex issue of state law; and (2) the Court should decline to exercise supplemental jurisdiction because the state law claims would predominate over federal law claims in terms of damages and because of the low proportion of opt-in plaintiffs under the FLSA (18 individuals) as compared to the total number of class members under the state law claims (*see* Filing No. 73 at 16–28).

It is undisputed that the FLSA, as a federally enacted statute, confers federal question subject-matter jurisdiction. The statute conferring supplemental jurisdiction, 28 U.S.C. § 1367(a), permits a court to decline supplemental jurisdiction under one of the four specifically enumerated

---

[1] Asher's outstanding Partial Motion for Summary Judgment, filed after Partlow's certification motion, has been stayed pending the Court's ruling on the class certification now before it (*see* Filing No. 82).

categories in subsection (c).  *Peterson v. Alaska Commc'ns Sys. Grp., Inc.*, 328 F.R.D. 255, 263 (D. Alaska 2018).  As explained in *Peterson*:

> The language conferring supplemental jurisdiction is clear: ". . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Courts that have considered the word "shall" have indicated that the court must exercise this jurisdiction absent exceptions enumerated in subsection (c).
>
> *Id.* (quoting 28 U.S.C. § 1367(a)) (citations omitted).

Asher's arguments are based on two of the exceptions enumerated in subsections (c)(1) and (c)(2) of section 1367, which state that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if-- (1) the claim raises a novel or complex issue of State law, [or] (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction . . . ."  The Court will address each exception in turn.

A. **§ 1367(c)(1)**

Asher's argument based on subsection (c)(1) of section 1367 — that "Partlow's Motion in effect asks this Court to interpret the IWPS in a way that no Indiana court ever has" (Filing No. 73 at 17), or at least requires a determination about the IWPS for which Indiana law is unclear, *see id.* at 21 — does not persuade the Court that it should decline supplemental jurisdiction.

To the extent it relates to the FLSA, the IWPS claim Partlow seeks to pursue by class action is in part premised on an implicit theory that the difference between the amount an employee is entitled to under the FLSA (including wages for roll call time) and the amount the employer

5

actually paid is an "amount due the employee" under Ind. Code § 22-2-5-1(a).[2]  Partlow argues she and other members of the putative class should be allowed recovery under the IWPS.

According to Asher, "Partlow appears to assert that her 'derivative' IWPS claim is broader than her FLSA claim in the sense that the IWPS permits Partlow to recover for unpaid wages that would not be compensable under the FLSA." (Filing No. 73 at 17.)  Asher views Partlow's claim as an "attempt to retroactively extract additional compensation." *Id*.

The Court is not persuaded.  Partlow's statement that the "FLSA evaluation . . . [was] unnecessary" was intended, in the Court's view, to argue that the legal determination of whether the unpaid hours in question constituted a "regular time violation" (*i.e.*, not being paid for regular, compensable working time, say, at a regular rate) or an "overtime violation" (*i.e.*, not being paid, or being paid less than the statutorily prescribed rate, for overtime) was ultimately inconsequential for purposes of certifying a IWPS class (Filing No. 71 at 10; *see id.* ("It won't matter if the unpaid roll call time was regular rate time or overtime.")).  According to Partlow, "every unpaid hour will raise a claim" under Indiana's wage payment statute.  *Id.*

Said differently, the IWPS counts 'unpaid hours' alike in vindicating FLSA violations and state law violations — but nevertheless safeguards only "amount[s] due", regardless of their stripe.  Although Indiana's wage payment statute itself does not define 'wages' or dictate *how* the 'wage' in question is to be calculated,[3] it does ensure that, "[w]hatever the wage agreed upon, the full

---

[2] Ind. Code § 22-2-5-1(a) holds in relevant part that employers "shall pay each employee . . . the amount due the employee."  The same section similarly refers to, but does not define, "all wages earned."  Ind. Code § 22-2-5-1(b).

[3] Because the Wage Payment Statute does not define "wages," Indiana courts regularly "look to the closely-related Wage Claims Statute, which defines wages as 'all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount.'" *Thomas v. H & R Block E. Enterprises, Inc.*, 630 F.3d 659, 664, 2011 WL 93026 (7th Cir. 2011) (quoting Ind. Code § 22-2-9-1(b)).

amount due the employee must be paid . . . ." *Howard v. Ray's LLC*, No. 1:08-cv-627, 2011 WL 4625735, at *6 (S.D. Ind. Sept. 30, 2011) (citing *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 704 n.4 (Ind. 2002)). The Court finds this point accurately describing Indiana law to be neither novel nor complex. *See, e.g.*, *Thacker v. Halter Vegetation Mgmt., Inc.*, No. 2:13-cv-378, 2015 WL 417713, at *13 (S.D. Ind. Jan. 30, 2015) ("A claim brought under the IWCA is considered 'derivative' of an FLSA claim in that the FLSA creates liability for unpaid hours, and the IWCA then provides a right to compensation for those unpaid hours.").

Moreover, the derivative-nature of Partlow's IWPS claim is not contrary to the statutory interpretation espoused in *St. Vincent Hospital* when the Indiana Supreme Court found "an employee's wage is a mutual decision *not governed by statute*." 766 N.E.2d at 704 n.4 (emphasis added). In context, it is clear that the *St. Vincent Hosp.* court did not mean to hold, nor arguably could it have held, that an employee's "wage" was left untouched by the FLSA, which sets federal minimum wage for all hours worked, *see* 29 U.S.C. § 206, and overtime premiums in certain circumstances, *see* 29 U.S.C. § 207. Even "mutual decision[s]" of employers and employees cannot contract under these mandatory floors.

Partlow advances a rather straightforward reading and application of the IWPS. She argues in essence that an "amount due by law — such as the amount due under federal law as a result of Defendant's alleged failure to comply with the FLSA — is an 'amount due the employee' under § 22-2-5-1(a)." *Adams v. Aztar Ind. Gaming Co.*, No. 3:20-cv-00143, 2021 WL 4316906, at *3 (S.D. Ind. Sept. 22, 2021). For purposes of determining jurisdiction, the cases cited by Asher do not foreclose Partlow's interpretation, and the Court remains unpersuaded that the issues are unduly complex or that supplemental jurisdiction should be declined on those grounds. Indeed, Indiana

federal courts routinely hear cases applying these state causes of action. *See, e.g.*, *Adams v. Aztar Ind. Gaming Co., LLC*, 587 F. Supp. 3d 753 (S.D. Ind. 2022). The Court thus foregoes declining supplemental jurisdiction under subsection § 1367(c)(1).

**B.     § 1367(c)(2)**

Asher's argument based on subsection (c)(2) of section 1367 — that the low proportion of opt-in plaintiffs to the total class members, as well as the low proportion of potential damages at stake, would lead to state law claims predominating in the litigation — is also unavailing.

It is well-settled that where state law claims essentially replicate the FLSA claims, they do not predominate such that courts must decline to exercise supplemental jurisdiction. *Peterson*, 328 F.R.D. at 265. The Seventh Circuit Court of Appeals has rejected arguments that numerical disparity between the opt-in class and the proposed Rule 23 class alone is a reason for declining supplemental jurisdiction. *See Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 980 (7th Cir. 2011) ("A simple disparity in numbers should not lead a court to the conclusion that a state claim 'substantially predominates' over the FLSA action, as section 1367(c) uses that phrase. . . . As long as the claims are similar between the state plaintiffs and the federal action, it makes no real difference whether the numbers vary."). Declining supplemental jurisdiction would be appropriate where, unlike here, "it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). As discussed above, the IWPS and the FLSA claims are both based on unpaid roll call wages. They therefore derive from a common nucleus of operative facts that makes trying them in a combined action not only allowable, but desirable. The exercise of supplemental jurisdiction will realize economy and efficiency by resolving both the original and the supplemental claim in a single proceeding.

The Court notes that Asher, despite making extensive argument that the potential damages "available under the FLSA to Partlow and other Opt-In Plaintiffs are nearly or entirely non-existent" provides no citation to precedential caselaw that any such disparity in potential damages between sets of claims (FLSA and IWPS) is determinative or precludes the exercise of supplemental jurisdiction ([Filing No. 73 at 24](Filing No. 73 at 24)).  Without such authority, the Court is hesitant to unnecessarily reduce the state law claims at this stage of the litigation or declare the situation is tantamount to the proverbial "tail wagging the dog." *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003) ("Generally, a district court will find substantial predomination where a state claim constitutes the real body of a case, to which the federal claim is only an appendage — only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog.") (internal quotation marks and citations omitted). Accordingly, the Court finds it appropriate to exercise supplemental jurisdiction over the IWPS claim.

### III. RULE 23 STANDARD

To certify a class, plaintiffs must first satisfy all four prerequisite requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy.  Fed. R. Civ. P. 24(a)(1)–(4).  Before evaluating the Rule 23 requirements, the court must first determine whether the class is identifiable, *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006), meaning that its class membership can be readily determined by reference to objective criteria. *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 496 (7th Cir. 2012).  If successful in that regard, plaintiffs must overcome the final hurdle by showing that the circumstances of their case fit one of the three "types" of class actions which Rule 23(b) defines.  Here, Partlow moves pursuant to Rule 23(b)(3).

Where certification is sought under Rule 23(b)(3), the plaintiffs must show that questions of law or fact common to the members of the proposed class predominate over any questions

affecting only individual class members and that a class action is the superior method of resolving the controversy. *Denney v. Amphenol Corp.*, No. 1:19-cv-4757, 2023 WL 6276072, at *5 (S.D. Ind. Sept. 26, 2023) (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012)). A party seeking class certification bears the burden of demonstrating that certification is appropriate by a preponderance of the evidence. *Id.*

The determination of whether to certify a proposed class is within the broad discretion of the district court. *See Perdue v. Individual Members of Indiana State Bd. of Law Examiners*, 266 F.R.D. 215, 217 (S.D. Ind. 2010) (quoting *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)). While consideration of class certification is not "a dress rehearsal for trial on the merits," the court "must receive evidence and resolve the disputes before deciding whether to certify the class." *Messner*, 669 F.3d at 811 (quoting *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)).

## IV. DISCUSSION

The Seventh Circuit Court of Appeals instructs that "employees who institute a collective action against their employer under the terms of the [FLSA] may at the same time litigate supplemental state-law claims as a class action certified according to Federal Rule of Civil Procedure 23(b)(3)." *Ervin*, 632 F.3d at 973–74; *see also Robertson v. Steamgard*, No. 11 C 8571, 2012 WL 1232090, *2 (N.D. Ill. 2012) ("[T]he Seventh Circuit has held that the FLSA is amenable to state-law claims for related relief in the same federal proceeding.") (internal quotation marks and citation omitted). Accordingly, this Court finds it proper that Partlow has brought, and seeks certification of, both her FLSA claim and her IWPS claim in the same litigation.

Partlow seeks certification of the following class under the IWPS: "Present and former Howard County Correction[s] Officers who attended one or more mandatory roll calls, but were

not paid wages for the roll call time, at any time from July 22, 2020 to the present."[4] (Filing No. 70 at 1.)  Partlow argues that her class meets all Rule 23(a) and Rule 23(b)(3) requirements and that it is ascertainable — a threshold requirement for class certification.  Since the Court finds that the proposed class definition is precise, defined by objective criteria, and not defined in terms of success on the merits, *see Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659-60 (7th Cir. 2015), findings which Asher does not dispute in his response (*see* Filing No. 73), the Court determines the class is ascertainable and turns to the Rule 23 requirements.

### A. Requirements under Rule 23(a)

#### 1. Numerosity

To meet the numerosity requirement, the class must be so large "that joinder of all members is impracticable." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (citing Fed. R. Civ. P. 23(a)).  Numerosity is satisfied where "it's reasonable to believe [the class is] large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 747 F.3d 489, 492 (7th Cir. 2014).  Generally speaking, classes of forty or more members have been found to be sufficiently numerous to warrant class certification.  *See Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859–60 (7th Cir. 2017); *Pruitt v. City of Chi.*, 472 F.3d 925, 926–27 (7th Cir. 2006).

Partlow points to "discovery showing that at least 94 and, approximately, 100 different current and former corrections officers worked from July 22, 2020 to the date of the production." (Filing No. 71 at 18; *see* Filing No. 71-1; *see also* Filing No. 78 at 5.)  In response to the class

---

[4] Although Asher argues that the IWPS applies only to current employees or employees that were voluntarily, but not involuntarily, terminated (*see* Filing No. 73 at 28–29), this interpretation of the IWPS is not clearly discernable from the text of Ind. Code § 22-2-5-2.  In any event, the Court need not determine whether such an interpretation applies to the IWPS at this time; Partlow explicitly limits the IWPS claims in her Complaint to "current and former . . . hourly-paid employees (*who voluntarily resigned from employment*) . . ." (Filing No. 1 at 13, ¶ 50) (emphasis added), which the Court finds will control and limit the certified class.

certification motion, Asher attached a list of the current and former corrections officers who worked for the Sheriff's Office during the time period relevant to this lawsuit, (Filing No. 72-1 at 4, ¶ 10), comprised of approximately ninety or so names (*see id.* at 15–16). Absent any argument to the contrary, the Court finds the numerosity requirement is satisfied.

        2.      **<u>Commonality</u>**

To satisfy the commonality requirement, the claims of the proposed class members "must depend upon a common contention that is capable of class-wide resolution." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015). "[A] common nucleus of operative fact is usually enough to satisfy the commonality requirement." *Spano v. Boeing Co.*, 294 F.R.D. 114, 120 (S.D. Ill. 2013) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). "A common nucleus of operative fact exists where 'defendants have engaged in standardized conduct towards members of the proposed class.'" *Gentry v. Floyd Cnty.*, No. 4:14-cv-54, 2016 WL 4088748, at *3 (S.D. Ind. July 25, 2016) (quoting *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)).

Here, Partlow and potential class members all work or worked for Asher as corrections officers at a single facility during the proposed class period and challenge participation in a mandatory unpaid fifteen-minute roll call at the beginning of each shift. Partlow asserts that every corrections officer was treated identically in that each was required to attend the roll calls and not paid for the mandatory work time.

The claims only concern a single facility. Absent any indication that certain potential class members are categorically distinct, or that the same or different policies would apply dissimilarly, it is reasonable to assume Asher's payroll practices related to roll call at the facility would apply uniformly to all potential class members. Accordingly, two questions of fact related to an evaluation of those practices can be answered: (1) did Asher require all class members to

participate in a mandatory fifteen-minute unpaid roll call at the beginning of each shift; and (2) did Asher pay or, alternatively, underpay any wages or compensation of any kind to class members for their participation? The Court finds the Rule 23 class mechanism will answer at least one question of law — did Asher violate the Indiana Wage Payment Statute and owe wages to employees for time spent working? With these questions capable of class-wide resolution, Partlow has cleared the commonality requirement.

### 3. Typicality

Typicality requires that the claims of the representative party be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A party's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Howard v. Cook Cty. Sheriff's Off.*, 989 F.3d 587, 605 (7th Cir. 2021) (citation omitted); *see Boling v. Burgess*, No. 1:21-cv-02208, 2022 WL 16743629, at *5 (S.D. Ind. Nov. 7, 2022).

Although Asher does not specifically dispute Partlow's assertion that she has satisfied the typicality requirement, he discusses the experiences of other current or former corrections officers who have been deposed in the case so far and alleges that each provided "somewhat differing testimony regarding their time working as [c]orrections [o]fficers." (Filing No. 73 at 9.) These factual distinctions in the deposition testimony which Asher points to — such as the regularity that certain officers were permitted or took lunch breaks — are marginal and do not dissuade the Court from concluding that Partlow's pursuit of her own individual claims will advance the interests of the proposed class. After all, "similarity in legal theory may control even in the face of differences of fact." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Partlow and the proposed class advance identical legal theories premised on a common course of wrongful conduct that produced a class-wide injury. That being Asher's workplace policy regularly resulted

13

in either no payment or the under payment of mandatory, compensable work activity of corrections officers. Since "the named representative's claims have the same essential characteristics as the claims of the class at large", *Lacy v. Cook Cty.*, 897 F.3d 847, 866 (7th Cir. 2018) (internal quotation and citation omitted), Partlow has cleared the typicality requirement.

### 4. Adequacy

For adequacy, a representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation refers to "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quotation omitted).

Asher does not challenge the class certification on adequacy grounds. Partlow's lawyers have vigorously prosecuted this action and are well-versed in wage and hour collective and/or class actions (*see* Filing No. 71-22, Filing No. 71-23). The Court has no reason to believe counsel are unqualified or that they will not fairly and adequately represent the interests of the class.

As for Partlow, the record demonstrates that she continued working for Asher after filing the lawsuit (*see* Filing No 71-3 at 1), and she continues to work there, attends the roll call every shift, and is not paid for the roll call time for the same reason as every other corrections officer (Filing No. 78 at 5). Partlow has a sufficient stake in the outcome to ensure zealous advocacy and lacks any antagonistic or conflicting claims with other putative class members that would detract from the adequacy of her representation. *See Smith v. GC Servs. Ltd. P'ship*, 2017 WL 3017272, at *3 (S.D. Ind. July 17, 2017) (citing *Retired Chicago Police Ass'n*, 7 F.3d at 594). In absence of any objection, the Court finds Partlow to be an adequate representative.

### B. Requirements under Rule 23(b)

In addition to meeting the class certification requirements under Rule 23(a), the proposed class must also satisfy the requirements of one of the three subsections of Rule 23(b). As mentioned previously, Partlow proposes that certification is appropriate under Rule 23(b)(3), which requires that: (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

The Court finds each of these requirements is met. Germane to all class members' claims are the factual issues of whether Asher required participation in mandatory fifteen-minute unpaid roll calls and paid or, alternatively, underpaid wages or compensation for that participation, and the legal issue of whether that practice is lawful under the Indiana Wage Payment Statute. Individual questions, like those regarding the amount of the proposed class members' damages, do not overwhelm the questions common to the class.

The Court concludes a class action is superior to other available methods of adjudicating the claims, especially since the key issues in this case are identical as to each of the near one hundred potential plaintiffs. To the extent that the putative class members' claims for damages are relatively small and/or the amount is offset by the payment of paid lunch breaks, those individuals could lack sufficient incentive to bring separate suits, tending to make a class action superior. *See Blanford v. St. Vincent Hosp. & Health Care Ctr., Inc.*, No. 1:08-cv-1094, 2009 WL 500527, at *8 (S.D. Ind. Feb. 27, 2009) (quoting *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 352–53 (N.D. Ill. 2008)) ("A class action is superior where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually.").

Accordingly, the superiority inquiry under Rule 23(b)(3) is satisfied. As Partlow has satisfied the requirements of Rule 23(a) and Rule 23(b)(3), she has demonstrated that certification of the proposed class seeking recovery of claims based on violations of the IWPS is appropriate.

C.      **Requested Exclusion of Certain FLSA Opt-In Plaintiffs**

One outstanding matter remains. In his response to the motion for class action certification, Asher asks to exclude from the lawsuit "those Opt-Plaintiffs who failed to participate in the discovery process" (Filing No. 73 at 29) — *i.e.*, he seeks dismissal of certain *opt-in* plaintiffs from the *FLSA collective action*. Not only does requesting separate relief within a response brief violate Local Rule 7.1(a), which requires motions to be filed separately, but no motion to compel the requested discovery has preceded Asher's present request. Accordingly, the Court declines at this time to dismiss parties from the collective action.

Following this ruling, certain deadlines under the Case Management Plan will be revisited (*see* Filing No. 16 at 5 (seeking to revisit discovery and dispositive motion deadlines after ruling on collective and class certification); *see also* Filing No. 82 (ordering the parties to confer and file a joint discovery schedule once the Court rules on the class certification)). To the extent that Asher seeks to exclude opt-ins in the future, he may seek to properly do so within the deadlines that will be established in due course.

V.      **ASHER'S PARTIAL SUMMARY JUDGMENT MOTION**

On December 12, 2023 Asher filed a Partial Motion for Summary Judgment (Dkt. 75). For purposes of efficiency and economy, Partlow requested that "all briefing and all court consideration of liability under the FLSA and Indiana Wage Payment Statute occur and be ruled-upon in one event based upon cross motions for summary judgment filed after any Court ruling on motions for class certification." (Filing No. 77 at 4). The deadlines relating to the summary judgment motion, including Partlow's response in opposition and Asher's reply in support of

16

motion, were **stayed** pending the Court's ruling on Plaintiff's Motion to Certify FRCP 23(b)(3) Class Action. (Filing No. 82). With this ruling, the briefing and discovery stay is **lifted**. If cross-motions are intended, Asher is granted leave to by motion, withdraw the pending partial summary judgment motion (Filing No. 75) without prejudice.

Within seven (7) days, the parties shall confer and file a joint discovery schedule as to all outstanding pretrial matters which should include whether the parties seek to file cross-motions for summary judgment. If cross-motions are intended, Asher is **granted leave to by motion, withdraw the pending partial summary judgment motion** (Filing No. 75) **without prejudice**.

## VI.  CONCLUSION

For the reasons stated above, Partlow's Motion to Certify Federal Rule of Civil Procedure 23 23(b)(c) Class Action (Filing No. 70) is **GRANTED**.

The Court **CERTIFIES** this case as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3), with Partlow as class representative of the class defined as:

> Present Howard County Corrections Officers, as well as any former corrections officers who voluntarily resigned from employment, who attended one or more mandatory roll calls, but were not paid wages for the roll call time, at any time from July 22, 2020 to the present.

**IT IS ORDERED** that, pursuant to Federal Rule of Civil Procedure 23(g), attorneys Robert J. Hunt and Robert Peter Kondras, Jr., are appointed class counsel.

The briefing and discovery stay, (Filing No. 82), is **lifted**. As noted above, within seven (7) days, the parties shall confer and file a joint discovery schedule as to all outstanding pretrial matters which should include whether the parties seek to file cross-motions for summary judgment. If cross-motions are intended, Asher is **granted leave to by motion, withdraw the pending partial summary judgment motion** (Filing No. 75) **without prejudice.** If not withdrawn, the response to Asher's partial summary judgment motion is due by no later than twenty-eight (28)

days following the date of this Order, and the reply is due fourteen (14) days after the response is filed. If not withdrawn, the parties should anticipate no extensions in these deadlines.

**SO ORDERED**.

Date: 7/10/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Robert J. Hunt
LAW OFFICE OF ROBERT J. HUNT, LLC
rob@indianawagelaw.com

Robert Peter Kondras, Jr.
HASSLER KONDRAS MILLER LLP
kondras@hkmlawfirm.com

Andrew S. Murphy
TAFT STETTINIUS & HOLLISTER LLP
amurphy@taftlaw.com

Blake J. Burgan
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
bburgan@taftlaw.com

Kristine Anne Gordon
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
kgordon@taftlaw.com