UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KELLY R. PARTLOW, individually and on behalf of others similarly situated, | ) ) CLASS ACTION COMPLAINT ) |
| Plaintiff | ) ) FLSA COLLECTIVE ACTION |
| COMPLAINT | ) ) |
| vs. | ) CASE NO. 1:22-cv-01467-TWP-MKK ) |
| JERRY ASHER in his official capacity as Howard County Sheriff, | ) ) ) |
| Defendant | ) |

***PlAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT***

### *I.   INTRODUCTION*

This motion seeks preliminary approval of the Settlement Agreement (the "Settlement") between Plaintiff Kelly R. Partlow ("Partlow" or "Plaintiff") and Defendant Jerry Asher in his official capacity as Howard County Sheriff ("Asher" or "Defendant"). Defendant does not oppose the motion subject to the terms of the Settlement.

The Settlement resolves a bona fide dispute over wage and hour claims brought against Defendant on behalf of a Class.[1]  Specifically, the Class includes all present and former Corrections Officers who attended one or more mandatory roll calls, but were not paid wages for the roll call time, at any time from July 22, 2020 to the present (the "Covered Period"). The Class includes 19 individuals ("Collective Members") who filed Consent to Become Party Plaintiff forms with the Court following the Court's entry of an Order Granting Joint Stipulation, which conditionally certified a stipulated collective action under the Fair Labor Standards Act ("FLSA"). [Doc. 33].

---

[1] All capitalized terms not otherwise defined herein have the definitions set forth in the Settlement.

In this lawsuit, Plaintiff challenges Defendant's failure to pay Corrections officers for their mandated participation in a 15 minute roll call meeting at the beginning of each scheduled shift. Plaintiff brings Indiana Wage Payment Statute ("IWPS") I.C.22-2-5-1 claims as a class action pursuant to Rule 23. The Court certified the Rule 23 class on July 10, 2024. [Doc. 83] Plaintiff also brings claims for violation of the overtime provisions of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. Plaintiff brings her FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b).

Defendant denied and continues to deny any liability to Plaintiff or the proposed Class and maintains that it complied with all applicable laws and acted at all times with the utmost good faith. However, the Parties agreed to settle this bona fide dispute and related claims in this Action in accordance with the terms of the Settlement Agreement. This resolution avoids the substantial time and costs of litigation, provides finality and certainty as to disputed claims, and is the result of substantial arm's-length negotiations.

Because the Settlement is fair and reasonable and was reached negotiated at arm's-length under the supervision of an experienced wage-and-hour mediator, it should be preliminarily approved. Through this unopposed Motion, Plaintiff requests that the Court enter an Order (1) preliminarily approving the Settlement and provisionally certifying the Class for settlement purposes only; (2) approving and authorizing the mailing of the proposed Class Notice regarding the Settlement; and (3) setting a hearing for final approval of the Settlement.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this putative class and collective action on July 22, 2022, in the United States District Court for the Southern District of Indiana. Plaintiff's Complaint asserted individual, class, and collective claims against Defendant for alleged violations of the FLSA and the IWPS.

Plaintiff's IWPS claims are based on Defendant's failure to pay for the mandatory roll call time. Plaintiff's FLSA claims are based not only upon the failure to pay mandatory roll call time, but also upon Defendant's failure to pay Corrections Officers for time performing work during their lunch breaks. Plaintiff alleges that Defendant violated the FLSA by not paying overtime premium wages for all hours worked in excess of forty (40) hours in a single workweek. Specifically, this case hinges on whether or not Defendant properly paid Class Members for all hours worked under the both state and federal law. Plaintiff sought to represent in a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), all opt-in plaintiffs employed by Defendant.

On February 17, 2023, the Court granted the Parties' Joint Stipulation to Conditional Certification of the Collective Action and 19 individuals have since opted-in to the collective action. Plaintiff also sought to represent in a class action pursuant to Federal Rule of Civil Procedure 23 all similarly situated Corrections Officers who attended one or more mandatory roll calls, but were not paid wages for the roll call time, at any time from July 22, 2020 to the present. The Court granted Plaintiff's motion to certify the Rule 23 class on July 10, 2024.

Shortly after the Court's ruling on certification and on August 8, 2024, Class Counsel mailed the approved Class Action Notice to Class Members. To date, no Class Member has opted-out of this class action.

On September 25, 2024, the Parties participated in a Settlement Conference before the Honorable M. Kendra Klump, Magistrate Judge, where the Parties reached a resolution of all claims on a class and collective action basis. [Doc. 98] This followed a failed settlement conference with the Magistrate Judge, which occurred on March 9, 2023. [Doc. 34]

### III.  ASHER'S DEFENSES

Defendant denied, and continues to deny, all of Plaintiff's material allegations and that

it has any liability to anyone under the claims asserted in the Action. Specifically, Defendant contends that it complied with all applicable law at all times and that it acted at all times with the utmost good faith. Defendant thus maintained that Defendant owed no additional wages under the FLSA or Indiana wage laws.

### IV. DISCOVERY AND MEDIATION

For over twenty-six months, the Parties vigorously litigated, investigated and conducted extensive discovery on Plaintiff's claims. Specifically, Defendant produced thousands of pages of documents relating to Defendant's policies and time and pay records of the Class. Additionally, the Parties conducted numerous depositions of Plaintiff, Opt-in Plaintiffs and Defendant's employees.

Again, prior to the successful Settlement Conference, the Parties engaged in significant formal discovery that enabled Plaintiff to evaluate the potential strengths and weaknesses of the claims and defenses in this action. This included production by Defendant and review by Plaintiff's counsel of employee handbooks and policies pertaining to timekeeping and overtime, class-wide payroll data.. (*Declaration of Robert J. Hunt* at 16)

At Settlement Conference, the Parties reached a settlement, which they memorialized in a Memorandum of Agreement and finalized over the following months. (*Id.* at ¶ 17.) On October 11, 2024, the Court ordered Plaintiff to file her motion for preliminary approval of the class and collective action settlement on or before November 12, 2024. [Doc. 99]

## V. SUMMARY OF THE SETTLEMENT

### A. Class

The Settlement includes the following Class Members:

> **Present and former Howard County Corrections Officers, as well as any former corrections officers who voluntarily resigned from employment, who attended one or more mandatory roll calls, but were not paid wages for the roll call time, at any time from July 22, 2020 to the present.**

(Exhibit 1, Settlement Agmt., § II.B.)

The Class as defined above, consists of 96 individuals.

### B. Settlement Amount

The Settlement obligates Defendant to pay a Total Settlement Amount of Four Hundred Thousand dollars ($400,000.00), from which all payments related to the Settlement shall be made, including payment of all Settlement Shares to participating Class Members; payment of the Class Representative Payment to Plaintiff; payment of Class Counsel's attorneys' fees and expenses; the employer portion of payroll taxes applicable to the portion of Settlement Shares designated as wages; and the Settlement Administrator's fees and expenses. (*See* Exh.1, Settlement Agmt., §§ II.V, III.A – C.)

Each Class Member will receive a proportional share of the Net Settlement Amount (*i.e.*, the Total Settlement Amount after deductions are made for the Class Representative Payment, Class Counsel Fees and Expenses Payment, employer portion of payroll taxes for Settlement Shares; and Settlement Administrator's fees and expenses) based on the number of weeks that the Class Member worked. (*Id.*, §§ II.Q., III.B.) The Settlement provides that the amounts Class Members will receive are based upon the number of weeks worked by each Class Member during the Covered Period. (*See id.*, § III.B; Exhibit 2, Hunt Decl., ¶ 17.)

To the extent that the Court approves of lesser amounts than designated in the Settlement for the Class Representative Payment or Class Counsel Fees and Expenses Payment, the remainder will be retained in the Net Settlement Amount and distributed to Class Members pursuant to the Settlement. (*Id.*, §§ III.C.1., III.C.2.)

### C. Payments to Class Representative and Class Counsel

Plaintiff and Class Counsel will apply to the Court for a Class Representative Payment of Twenty Thousand Dollars ($10,000.00) to Plaintiff when Plaintiff files her motion for final approval of the Settlement. (Exh. 1, Settlement Agmt., § III.C.1.) Such payments are commonly referred to as "incentive" or "enhancement" awards. Because named plaintiffs are "an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (citation omitted); *see also Swift v. Direct Buy, Inc.*, No. 2:11-CV-401-TLS, 2013 WL 5770633, at *9 (N.D. Ind. Oct. 24, 2013) (approving incentive awards for each of 34 named plaintiffs where incentive awards were small percentage of overall recovery and named plaintiffs acted as representatives despite knowing litigation could be long and complex and that they would be subject to depositions and cross examination at trial).

Plaintiff provided documents and information to Class Counsel, reviewed documents, dedicated substantial time to this case, including participating in her deposition and in the two settlement conferences with the Magistrate Judge, and faced the risk of a cost award against her. (Hunt Decl., ¶ 18.) Without the significant work done by Plaintiff, the Class Members would not have benefitted from the Settlement. (*Id.*) Federal courts in Indiana have approved class representative payments equal to or more than the amount sought for the Plaintiff in this case. (See *Trevino III, et al. v. Bremen Castings, Inc.*, Case No. 3:18-cv-00271 (N.D. Ind.), approving

6

$15,000 representative payments to plaintiffs from a gross settlement amount of $315,000; and *Schneider, et al. v. Union Hospital Inc.*, Case No. 2:15-cv-00204-JMS-DKL (S.D. Ind.) approving $25,000 representative payments to plaintiffs from a gross settlement amount of $2,500,000)

In addition, when Plaintiff files her joint motion for final approval of the Settlement, Class Counsel will apply to the Court for a Class Counsel Fees and Expenses Payment of not more than One Hundred Thirty Eight Thousand One Hundred Seventy-Two Dollars and Eighty-Nine Cents ($138,172.89), representing one-third of the Total Settlement Amount and $4,839.56 for expenses. (Exh. 1, Settlement Agmt., § III.C.2.)

"Under the 'common-fund' doctrine, class counsel is entitled to a reasonable fee drawn from the commonly held fund created by a settlement for the benefit of the class." *Bell v. Pension Comm. of ATH Holding Co., LLC*, No. 115CV02062TWPMPB, 2019 WL 4193376, at *2 (S.D. Ind. Sept. 4, 2019) (citing *Boeing Co. v. VanGemert*, 444 U.S. 472, 478 (1980)). The primary benefit that this Settlement provides to the Class Members is the creation of a gross settlement pool from which the Class Members will receive compensation for the overtime claims raised in the lawsuit. The percentage requested in attorneys' fees—one-third (33.33%) of the common fund—is reasonable and has routinely been approved by the courts in the Seventh Circuit in complex areas of law. *See id.* at *3.

### D. **Release of Claims**

In consideration for their awarded Settlement Shares, all Class Members (other than those Class Members who timely and validly elect not to participate in the Settlement) release the following claims:

> [A]ny and all past, present, or future claims, demands, disputes, allegations, rules or regulations, actions, proceedings, suits, debts, accounts, contracts, agreements, controversies, judgments, obligations, damages, liabilities, and any other causes of action of whatever nature, whether known or unknown,

which the Class Member had, now has, or hereafter may have, or claim to have, against any of the Released Parties by reason of any act, transaction, practice, conduct, or omission arising out of, or related to, or based upon, in whole or in part, the allegations in the Action or the manner in which they were paid as home health employees at any time during the Covered Period ("Class Members' Released Claims"). Plaintiff and all Class Members' Released Claims include, but are not limited to, the following:

a. All claims under the FLSA, the IWPS, the IWCS, the IWAA, any agency orders, and all other federal, state, and local laws for unpaid wages, including but not limited to regular wages, minimum wages, overtime wages, and compensation of any type, including claims relating to the timing or delay of payment of wages or other compensation relating to their work for Defendant during the Covered Period;

b. All claims under the FLSA, the IWPS, the IWCS, the IWAA, any agency orders, and all other federal, state, and local laws for liquidated damages, exemplary damages, penalties, fines, attorneys' fees, costs, and other damages or relief of any type relating to their work for Defendant during the Covered Period;

c. All claims for conversion, breach of contract, quantum meruit, unjust enrichment, theft of labor, or other common law causes of action related to any alleged failure to pay for work performed or to be performed for Defendant during the Covered Period;

d. All claims for any other type of relief, including declaratory or injunctive relief, reasonably relating to the allegations in the Action during the Covered Period; and

e. All related claims for interest reasonably relating to the allegations in the Action during the Covered Period.

(Exh. 1, Settlement Agmt., § III.F.1.) The Settlement also addresses the effect of cashing the

Settlement Share checks as follows:

> A Class Member who cashes his or her Settlement Share check will be deemed to have consented to join the collective action pursuant to section 16(b) of the FLSA and to have released any and all claims under the FLSA, the IWPS, and other state and local laws within the scope of the release set forth in section III.F.2 of the Settlement. However, a Collective Member who already consented to join the collective action pursuant to section 16(b) of the FLSA and thus is already a party to the Action will be deemed to have released any and all claims under the FLSA even if the Collective Member

> does not cash his or her Settlement Share check. As for the other Class Members who are not also Collective Members, even if such Class Member does not cash his or her Settlement Share check, he or she will be bound by the Settlement and be deemed to have released all claims to the maximum extent permitted by law, including but not limited to all claims under the IWPS and other state and local laws within the scope of the release set forth in section III.F.2 of the Settlement, unless he or she timely submits a valid Election Not to Participate in Settlement.

(*Id.*, § III.E.10.)

### E. Fees and Expenses of Settlement Administration

The Parties seek approval of Analytics Consulting, LLC., as the Settlement Administrator (the "Settlement Administrator"). (Exh.1 Settlement Agmt. § III.D) The Settlement Administrator's fees and expenses shall be paid from the Total Settlement Amount. The Settlement Administrator will deliver the Class Notice regarding the Settlement via U.S. First Class mail; receive and process objections and opt-outs, if any; issue settlement checks, and handle Settlement-related administrative work, such as tax reporting. The Settlement Administrator's fees and costs are projected to be Five Thousand Dollars ($5,00.00).

### IV. ARGUMENT

The Settlement Agreement was negotiated at arm's length, and the terms are favorable to all Class Members when compared with the potential benefits and risks of further litigation. Therefore, Plaintiff requests that the Court preliminarily approve the Settlement and certify the Class; approve and authorize the mailing of the proposed Class Notice; and set a hearing for final approval of the Settlement.

### A. The Court Should Preliminarily Approve the Settlement Agreement.

When parties seek preliminary approval of a class action settlement agreement, the court must decide "whether the proposed settlement is 'within the range of possible approval.'" *Chapman v. Bowman, Heintz, Boscia & Vician, P.C.*, No. 2:15-CV-120 JD, 2015 WL 9478548, at

\*7 (N.D. Ind. Dec. 29, 2015) (citation omitted).  The Settlement reached in this case is solidly within the "range of possible approval."

Under FED. R. CIV. P. 23(e)(2), the Court may approve a class action settlement if "it is fair, reasonable, and adequate."  As one district court within the Seventh Circuit recently articulated:

> In assessing a settlement's fairness, "relevant factors include: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) [the] stage of the proceedings and the amount of discovery completed."

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, MDL No. 2492, 2016 WL 305380, at \*6 (N.D. Ill. Jan. 26, 2016) (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)).

Federal courts naturally favor the settlement of class action litigation.  *See EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-889 (7th Cir. 1985) (noting "the general policy favoring voluntary settlements of class action disputes") (citations omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.") (citations omitted); *see also* WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 13.1 (5th ed. Supp. 2015) (noting that there is "a 'strong judicial policy in favor of class action settlement'"); *id.* at § 13.44 ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.  Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation.").

In the present case, the Settlement meets the fairness requirements for multiple reasons.  First, for more than two years prior to attending successful Settlement Conference and entering

into the Settlement, the Parties engaged in significant exchange of documents and information, including data pertaining to Class Members, conducted numerous depositions and engaged in numerous discussions regarding the merits of the claims and defenses. This enabled the Parties to determine the scope of potential damages and to assess the strengths and weaknesses of their respective positions. *See Chapman*, 2015 WL 9478548, at *7 (in granting preliminary approval of settlement, noting that "[t]he litigation has been pending for six months, during which time, the parties were able to assess the strengths and weaknesses of their respective positions.").

Plaintiff believes she has a strong claim made based on the allegations that Defendant failed to pay Class Members for all hours worked. (Hunt Decl., ¶ 19) Rule 23 Class Members were not paid for 15 minutes of time each shift. The Settlement takes into account the strengths and weaknesses of the Parties' respective positions and evidence, and the difficulties in proving either side's claims and defenses.

Class Counsel estimates that the Rule 23 Class is owed approximately $128,940.00 in unpaid roll call wages and an additional $257,880 in liquidated damages under the IWPS. The $246,827.11 total distributed to the Class Members under the Settlement reached in this case is approximately 191% of the estimated amount of unpaid roll call wages owed to Plaintiff and Class Members when applying a two-year statute of limitations. (*Id.*) When considering the possibility of obtaining liquidated damages, the $246,827.11 total distributed to Class Members is still approximately 64% of the best possible recovery for the Rule 23 Class of $386,820. Rule 23 Class Members will receive a settlement share amounting to approximately $20.72 per week worked during the Covered Period. For context, Class Members were paid approximately $20 per hour through the Covered Period. FLSA Opt-in plaintiffs will receive an additional $106.12 per week

worked during the Covered Paid as a result of their additional claims for deductions for lunch breaks that they never received. (Hunt Decl., ¶ 20)

Class counsel has achieved an excellent result for the Class Members, particularly in light of the risks and uncertainties associated with continued litigation. Defendant has asserted various legal and factual defenses that were thoroughly discussed in the Rule 23 Certification Briefing, If this case continued and Defendant were to be successful on any or all of these defenses and challenges, Plaintiff would risk obtaining no recovery for the Class Members. Additionally, in order to obtain an award of liquidated damages under IWPS, Plaintiff would be required to prove that Defendant acted in bad faith when failing to properly pay Class Members for all hours worked. (Hunt Decl., ¶ 21)

Second, "[c]ourts have approved settlements even though, unlike here, the benefits amounted to only a small percentage of the potential recovery." *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *5 (N.D. Ill. Oct. 10, 1995) (citations omitted); *see also Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (approving settlement of 20% of maximum possible recovery and noting courts have approved settlements amounting to 15% and 17% of maximum possible recovery) (citations omitted); *Godshall v. Franklin Mint Co.*, No. 01-CV-6539, 2004 WL 2745890, at *5 (E.D. Pa. Dec. 1, 2004) (finding proposed settlement amount of 46% of maximum possible recovery to be reasonable); *In re Newbridge Networks Sec. Litig.*, No. Civ. A. 94-1678-LFO, 1998 WL 765724, at *2 (D.D.C. Oct. 28, 1998) (agreement securing between six and twelve percent of potential trial recovery "seems to be within the targeted range of reasonableness").

Third, all involved would benefit from the Settlement as it provides a means of avoiding the reality of protracted and uncertain litigation on the issues involved in this case. Preliminary

approval of a settlement is an appropriate means of avoiding these uncertainties, especially where, as here, Defendant denies liability and the Parties disagree about the merits of the case. *See Chapman*, 2015 WL 9478548, at *7-8.

Finally, adding to the reasonableness of the Settlement, "class members will obtain these benefits much more quickly than had the parties not settled," and "even if the case reached trial, the class members would not receive benefits for many years, if they received any at all." *Id.* at *7 (quoting *Swift v. DirectBuy, Inc.*, Nos. 2:11-cv-401, 2:11-cv-415, 2:11-cv-417, 2:12-cv-45, 2013 WL 5770633, at *5 (N.D. Ind. Oct. 24, 2013)).

As such, the Settlement here is fair, reasonable and adequate, and preliminary approval is warranted.

**B.** **The Proposed Class Notice Complies with Federal Rule of Civil Procedure 23 and Is Constitutionally Sound.**

a.  **Rule 23.**

The class notice must clearly and concisely state the following information in plain, easily understood language:

(i)   the nature of the action;

(ii)  the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv)  that a class member may enter an appearance through an attorney if the member so desires;

(v)   that the court will exclude from the class any member who requests exclusion;

(vi)  the time and manner for requesting exclusion; and

13

    (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

FED. R. CIV. P. 23(c)(2)(B); *see also* FED. R. CIV. P. 23(e)(1) (in the context of a proposed settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal").

  The proposed Class Notice contains the specific information required by Rule 23(c)(2)(B). (*See* Exh. 1, Settlement Agreement, Exh. A (Class Notice).) The proposed Class Notice is also accurate, informative and easy to understand. The Class Notice is written in plain language and provides clear and accurate information as to the nature and principal terms of the Settlement Agreement, including the monetary and other relief the Settlement will provide Class Members; an explanation of the method of allocating Settlement Amount monies to Class Members; the scope of releases; the Settlement Administrator's estimated expenses; the procedures and deadlines for opting out and submitting objections; the consequences of taking or foregoing the various options available to Class Members; and the date, time and place of the Final Approval hearing.

  Further, pursuant to Rule 23(h), the Notice of Settlement also sets forth the maximum amount of attorneys' fees and costs that may be sought by Class Counsel. Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See, e.g.*, 4 NEWBERG ON CLASS ACTIONS (Fourth) §§ 8.21, 8.39; *Manual Fourth* §§ 21.311-21.312.

  Courts have approved class notices even when they provided only general information about a settlement. *See McCue v. MB Fin., Inc.*, No. 1:15-cv-00988, 2015 WL 1020348, at *4 (N.D. Ill. Mar. 6, 2015) (finding proposed class notice "appropriate because it describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific

14

information regarding the date, time, and place of the final approval hearing") (citation omitted); *see also In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (noting that "[n]ormally, settlement notices need only describe the terms of the settlement generally") (citations omitted). Thus, the proposed Class Notice not only complies with the requirements of Rule 23(c)(2)(B) and Rule 23(e)(1), but exceeds the minimum requirements for obtaining preliminary approval.

b. **Due Process.**

Due process requires the class notice to be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted); *see also Chapman*, 2015 WL 9478548, at *9 (N.D. Ind. Dec. 29, 2015) (proposed class notice constituted due and sufficient notice where settlement required class administrator to mail notice to class members and attempt to locate class members whose notices were returned as undeliverable and update addresses as needed using standard methodology).

Due process, however, "does not require the notice to set forth every ground on which class members might object to the settlement." *Mullane*, 339 U.S. at 314 (internal quotation marks and citation omitted). Rather, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Id.* (alteration in original, internal quotation marks and citation omitted).

The proposed Class Notice satisfies the requirements of due process. Under the terms of the Settlement, the Settlement Administrator send the Notice of Settlement to each Class Member by U.S. First Class mail. (*See* Exh. 1, Settlement Agmt., § III.E.2.) The Settlement Administrator

15

will endeavor to ensure that each Class Member receives his or her Class Notice by taking all reasonable steps to trace the addresses of Class Members. (*See id.*) Upon return of any Class Notice, the Settlement Administrator will promptly search for the Class Member's address and, if found, will re-mail the Class Notice to the Class Member. (*See id.*) Furthermore, Class Members may contact Class Counsel or the Settlement Administrator to obtain a copy of the Settlement Agreement. (*See id.*, Exh A (Class Notice).)

Class Members will have forty-five (45) days from the date of mailing of the Class Notice Packets to review, opt-out of, or object to the Settlement. (Id., § III.E.3) Class Counsel's information is provided in the Class Notice Packet so Class Members can ask any questions relating to the Settlement. (*See id.*, Exh. A (Class Notice).)

This notice plan is consistent with class certification notices approved by numerous courts, and is, under the circumstances of this case, the best notice practicable. *See, e.g.*, *Wright v. Linkus Enters., Inc.*, No. 2:07-cv-01347-MCE, 2009 WL 2365436, at *7-8 (E.D. Cal. July 29, 2009) (holding notice involving similar mail procedures met both Rule 23(e) requirement that "proposed settlement is fundamentally fair, adequate, and reasonable" and "Rule 23(c)(2)(B) requirement that the Court direct 'best notice that is practicable under the circumstances'") (quoting Fed. R. Civ. P. 23(c)(2)(B), (e)); *Davis v. Abercrombie & Fitch Co.*, No. 08-CV-01859(PKC)(AJP), 2009 WL 1542552, at *1-4 (S.D.N.Y. June 2, 2009) (approving similar method of issuing class notice); *In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *6-7 (S.D. Cal. Apr. 13, 2009) (finding similar method to be "best notice practicable"); *Adams v. Inter-Con Security Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3-4 (N.D. Cal. Oct. 30, 2007) (notice using similar method "satisfies the notice requirements of Rule 23(e), and . . . all other legal and due process requirements").

## V. CONCLUSION

For the reasons set forth above, Plaintiff requests that the Court approve and authorize the mailing of the proposed Class Notice; and set a hearing for final approval of the Settlement.

Dated: November 12, 2024

Respectfully submitted,

/s/Robert J. Hunt
Robert J. Hunt (#30686-49)
Robert F. Hunt (#7889-84)
THE LAW OFFICE OF ROBERT J. HUNT, LLC
1905 South New Market Street, Suite 168
Carmel, Indiana 46032
Telephone: (317) 743-0614
Facsimile: (317) 743-0615
rob@indianawagelaw.com
rfh@indianawagelaw.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on September 12, 2024 a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Robert J. Hunt
Robert J. Hunt

17