UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KELLY R. PARTLOW, individually and on behalf of others similarly situated, | ) <br> ) CLASS ACTION COMPLAINT <br> ) |
| Plaintiff | ) <br> ) <br> ) FLSA COLLECTIVE <br> ) ACTION COMPLAINT <br> ) |
| vs. | ) CASE NO. 1:22-cv-01467-TWP-MKK <br> ) |
| JERRY ASHER in his official capacity as Howard County Sheriff, | ) <br> ) <br> ) |
| Defendant | ) |

***PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS SETTLEMENT***

**I.   INTRODUCTION**

This unopposed motion seeks final approval of the class and collective action settlement of $400,000.00 (the "Settlement") between Plaintiff Kelly R. Partlow ("Partlow"), individually and on behalf of all class members (hereinafter collectively referred to as "Plaintiff" or "Class Members") and Defendant Jerry Asher in his official capacity as Howard County Sheriff ("Asher" or "Defendant").

The Settlement resolves wage and hour claims brought against Defendant on behalf of a Class defined and preliminarily approved by the Court for purposes of the Settlement only. Specifically, the Class includes all present and former Corrections Officers who attended one or more mandatory roll calls, but were not paid wages for the roll call time, at any time from July 22, 2020 to the present (the "Covered Period"). The Class includes 19 individuals ("Collective Members") who filed Consent to Become Party Plaintiff forms with the Court following the Court's entry of an Order Granting Joint Stipulation, which conditionally certified a stipulated

collective action under the Fair Labor Standards Act ("FLSA"). [Doc. 33] Defendant denied and continues to deny any liability to Plaintiff or the proposed Class and maintains that Defendant has complied and continues to comply with all applicable laws. However, Defendant agreed to settle the Action in accordance with the terms of the Settlement Agreement to avoid the costs of litigation. [See generally Exhibit A, Settlement Agreement] This early resolution avoids the substantial time and costs of litigation, provides finality and certainty as to disputed claims, and is the result of substantial arm's-length negotiations.

Of the 96 Class Members, no one has opted out of the Settlement, and no member of the Settlement Class has objected to the Settlement. [See Ex. 2, Settlement Administrator's Declaration, ¶¶ 5 and 9] Thus all 96 Class Members will be eligible to receive payments under the Settlement should the Court grant final approval and, as described more fully below, the Settlement is fair, reasonable, and adequate. For all these reasons, Plaintiff respectfully request the Court grant her Unopposed Motion for Final Approval of Class Settlement so that funds may be distributed to workers awaiting payments.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this putative class and collective action on July 22, 2022, in the United States District Court for the Southern District of Indiana. Plaintiff's Complaint asserted individual, class, and collective claims against Defendant for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; and the Indiana Wage Payment Statute ("IWPS"), Ind. Code § 22-2-5. Plaintiff's IWPS claims are based on Defendant's failure to pay for the mandatory roll call time. Plaintiff's FLSA claims are based not only upon the failure to pay mandatory roll call time, but also upon Defendant's failure to pay Corrections Officers for time performing work during their lunch breaks. Plaintiff alleges that Defendant violated the FLSA by not paying

overtime premium wages for all hours worked in excess of forty (40) hours in a single workweek. Specifically, this case hinges on whether or not Defendant properly paid Class Members for all hours worked under the both state and federal law. Plaintiff sought to represent in a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), all opt-in plaintiffs employed by Defendant.

On February 17, 2023, the Court granted the Parties' Joint Stipulation to Conditional Certification of the Collective Action and 19 individuals have since opted-in to the collective action. Plaintiff also sought to represent in a class action pursuant to Federal Rule of Civil Procedure 23 all similarly situated Corrections Officers who attended one or more mandatory roll calls, but were not paid wages for the roll call time, at any time from July 22, 2020 to the present. The Court granted Plaintiff's motion to certify the Rule 23 class on July 10, 2024.

Shortly after the Court's ruling on certification and on August 8, 2024, Class Counsel mailed the approved Class Action Notice to Class Members. To date, no Class Member has opted-out of this class action.

On September 25, 2024, the Parties participated in a Settlement Conference before the Honorable M. Kendra Klump, Magistrate Judge, where the Parties reached a resolution of all claims on a class and collective action basis. [Doc. 98] This followed a failed settlement conference with the Magistrate Judge, which occurred on March 9, 2023. [Doc. 34]

For over twenty-six months, the Parties vigorously litigated, investigated and conducted extensive discovery on Plaintiff's claims. Specifically, Defendant produced thousands of pages of documents relating to Defendant's policies and time and pay records of the Class. Additionally, the Parties conducted numerous depositions of Plaintiff, Opt-in Plaintiffs and Defendant's employees.

Again, prior to the successful Settlement Conference, the Parties engaged in significant formal discovery that enabled Plaintiff to evaluate the potential strengths and weaknesses of the claims and defenses in this action. This included production by Defendant and review by Plaintiff's counsel of employee handbooks and policies pertaining to timekeeping and overtime, class-wide payroll data.

At Settlement Conference, the Parties reached a settlement, which they finalized over the following months. On October 11, 2024, the Court ordered Plaintiff to file her motion for preliminary approval of the class and collective action settlement on or before November 12, 2024. [Doc. 99]

Again, prior to the mediation, the Parties engaged in significant formal discovery that enabled Plaintiff to evaluate the potential strengths and weaknesses of the claims and defenses in this action. This included production by Defendant and review by Plaintiff's counsel of employee handbooks and policies pertaining to timekeeping and overtime, class-wide payroll data, and other raw data relating to the home health employees' activities and time worked.

On November 12, 2024, Plaintiff filed her Unopposed Motion for Preliminary Approval of Class Settlement. [Docket No. 100] On November 14, 2024, the Court entered its Order granting Plaintiff's Unopposed Motion for Preliminary Approval of Class Settlement ("Preliminary Approval Order") and setting a hearing on final approval for March 4, 2025. (Docket No. 102) Pursuant to the Preliminary Approval Order, a Notice of Proposed Class Action Settlement and Final Approval Hearing (the "Class Notice") was sent to each Class Member by first-class U.S. Mail. (Ex. 2, Settlement Administrator's Declaration, ¶ 7). The Class Notice informed Class Members of the terms of the Settlement, their rights under the Settlement, their right to object to the Settlement, their right to receive a Settlement Share, their right to opt out of the Settlement and

pursue their own remedies, and their right to appear in person or by counsel at the final approval hearing and be heard regarding final approval of the Settlement. Adequate periods of time were provided by each of these procedures.

As of this filing, of the no Class Members, no one opted out of the Settlement and no Class Member has objected to the Settlement. [See Ex. 2, Settlement Administrator's Declaration, ¶ 9]

V. SUMMARY OF THE SETTLEMENT

A. Class

The Settlement includes the following Class Members:

> **Present and former Howard County Corrections Officers, as well as any former corrections officers who voluntarily resigned from employment, who attended one or more mandatory roll calls, but were not paid wages for the roll call time, at any time from July 22, 2020 to the present.**

(Exhibit 1, Settlement Agmt., § II.B.)

The Class as defined above, consists of 96 individuals.

B. Settlement Amount

The Settlement obligates Defendant to pay a Total Settlement Amount of Four Hundred Thousand dollars ($400,000.00), from which all payments related to the Settlement shall be made, including payment of all Settlement Shares to participating Class Members; payment of the Class Representative Payment to Plaintiff; payment of Class Counsel's attorneys' fees and expenses; the employer portion of payroll taxes applicable to the portion of Settlement Shares designated as wages; and the Settlement Administrator's fees and expenses. (*See* Exh.1, Settlement Agmt., §§ II.V, III.A – C.)

Each Class Member will receive a proportional share of the Net Settlement Amount (*i.e.*, the Total Settlement Amount after deductions are made for the Class Representative Payment, Class Counsel Fees and Expenses Payment, employer portion of payroll taxes for Settlement

5

Shares; and Settlement Administrator's fees and expenses) based on the number of weeks that the Class Member worked. (*Id.*, §§ II.Q., III.B.)  The Settlement provides that the amounts Class Members will receive are based upon the number of weeks worked by each Class Member during the Covered Period. (*See id.*, § III.B)

To the extent that the Court approves of lesser amounts than designated in the Settlement for the Class Representative Payment or Class Counsel Fees and Expenses Payment, the remainder will be retained in the Net Settlement Amount and distributed to Class Members pursuant to the Settlement.  (*Id.*, §§ III.C.1., III.C.2.)

      **C.**      **Payments to Class Representative and Class Counsel**

Plaintiff and Class Counsel will apply to the Court for a Class Representative Payment of Ten Thousand Dollars ($10,000.00) to Plaintiff when Plaintiff files her motion for final approval of the Settlement.  (Exh. 1, Settlement Agmt., § III.C.1.)  Such payments are commonly referred to as "incentive" or "enhancement" awards.  Because named plaintiffs are "an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."  *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (citation omitted); *see also Swift v. Direct Buy, Inc.*, No. 2:11-CV-401-TLS, 2013 WL 5770633, at *9 (N.D. Ind. Oct. 24, 2013) (approving incentive awards for each of 34 named plaintiffs where incentive awards were small percentage of overall recovery and named plaintiffs acted as representatives despite knowing litigation could be long and complex and that they would be subject to depositions and cross examination at trial).

Plaintiff provided documents and information to Class Counsel, reviewed documents, dedicated substantial time to this case, including participating in her deposition and in the two settlement conferences with the Magistrate Judge, and faced the risk of a cost award against her.

Without the significant work done by Plaintiff, the Class Members would not have benefitted from the Settlement. Federal courts in Indiana have approved class representative payments equal to or more than the amount sought for the Plaintiff in this case. (See *Trevino III, et al. v. Bremen Castings, Inc.,* Case No. 3:18-cv-00271 (N.D. Ind.), approving $15,000 representative payments to plaintiffs from a gross settlement amount of $315,000; and *Schneider, et al. v. Union Hospital Inc.*, Case No. 2:15-cv-00204-JMS-DKL (S.D. Ind.) approving $25,000 representative payments to plaintiffs from a gross settlement amount of $2,500,000)

In addition, contemporaneously with the filing of thise motion for final approval of the Settlement, Class Counsel will apply to the Court for a Class Counsel Fees and Expenses Payment of not more than One Hundred Thirty Eight Thousand One Hundred Seventy-Two Dollars and Eighty-Nine Cents ($138,172.89), representing one-third of the Total Settlement Amount and $4,839.56 for expenses. (Exh. 1, Settlement Agmt., § III.C.2.)

"Under the 'common-fund' doctrine, class counsel is entitled to a reasonable fee drawn from the commonly held fund created by a settlement for the benefit of the class." *Bell v. Pension Comm. of ATH Holding Co., LLC*, No. 115CV02062TWPMPB, 2019 WL 4193376, at *2 (S.D. Ind. Sept. 4, 2019) (citing *Boeing Co. v. VanGemert*, 444 U.S. 472, 478 (1980)). The primary benefit that this Settlement provides to the Class Members is the creation of a gross settlement pool from which the Class Members will receive compensation for the overtime claims raised in the lawsuit. The percentage requested in attorneys' fees—one-third (33.33%) of the common fund—is reasonable and has routinely been approved by the courts in the Seventh Circuit in complex areas of law. *See id.* at *3.

    **D.**    <u>**Release of Claims**</u>

In consideration for their awarded Settlement Shares, all Class Members (other than those Class Members who timely and validly elected not to participate in the Settlement) release the following claims:

> [A]ny and all past, present, or future claims, demands, disputes, allegations, rules or regulations, actions, proceedings, suits, debts, accounts, contracts, agreements, controversies, judgments, obligations, damages, liabilities, and any other causes of action of whatever nature, whether known or unknown, which the Class Member had, now has, or hereafter may have, or claim to have, against any of the Released Parties by reason of any act, transaction, practice, conduct, or omission arising out of, or related to, or based upon, in whole or in part, the allegations in the Action or the manner in which they were paid as home health employees at any time during the Covered Period ("Class Members' Released Claims"). Plaintiff and all Class Members' Released Claims include, but are not limited to, the following:
>
> a. All claims under the FLSA, the IWPS, the IWCS, the IWAA, any agency orders, and all other federal, state, and local laws for unpaid wages, including but not limited to regular wages, minimum wages, overtime wages, and compensation of any type, including claims relating to the timing or delay of payment of wages or other compensation relating to their work for Defendant during the Covered Period;
>
> b. All claims under the FLSA, the IWPS, the IWCS, the IWAA, any agency orders, and all other federal, state, and local laws for liquidated damages, exemplary damages, penalties, fines, attorneys' fees, costs, and other damages or relief of any type relating to their work for Defendant during the Covered Period;
>
> c. All claims for conversion, breach of contract, quantum meruit, unjust enrichment, theft of labor, or other common law causes of action related to any alleged failure to pay for work performed or to be performed for Defendant during the Covered Period;
>
> d. All claims for any other type of relief, including declaratory or injunctive relief, reasonably relating to the allegations in the Action during the Covered Period; and
>
> e. All related claims for interest reasonably relating to the allegations in the Action during the Covered Period.

(Exh. 1, Settlement Agmt., § III.F.1.)  The Settlement also addresses the effect of cashing the Settlement Share checks as follows:

> A Class Member who cashes his or her Settlement Share check will be deemed to have consented to join the collective action pursuant to section 16(b) of the FLSA and to have released any and all claims under the FLSA, the IWPS, and other state and local laws within the scope of the release set forth in section III.F.2 of the Settlement.  However, a Collective Member who already consented to join the collective action pursuant to section 16(b) of the FLSA and thus is already a party to the Action will be deemed to have released any and all claims under the FLSA even if the Collective Member does not cash his or her Settlement Share check. As for the other Class Members who are not also Collective Members, even if such Class Member does not cash his or her Settlement Share check, he or she will be bound by the Settlement and be deemed to have released all claims to the maximum extent permitted by law, including but not limited to all claims under the IWPS and other state and local laws within the scope of the release set forth in section III.F.2 of the Settlement, unless he or she timely submits a valid Election Not to Participate in Settlement.

(*Id.*, § III.E.10.)

### E. Fees and Expenses of Settlement Administration

The Parties seek approval of Analytics Consulting, LLC., as the Settlement Administrator (the "Settlement Administrator").  (Exh.1 Settlement Agmt. § III.D)  The Settlement Administrator's fees and expenses shall be paid from the Total Settlement Amount. The Settlement Administrator will deliver the Class Notice regarding the Settlement via U.S. First Class mail; receive and process objections and opt-outs, if any; issue settlement checks, and handle Settlement-related administrative work, such as tax reporting. The Settlement Administrator's fees and costs are projected to be Five Thousand Dollars ($5,000.00).

### F. Settlement Administration, Opting Out and Objections.

Subject to Court approval, the Settlement has been or will be administered by the Settlement Administrator in accordance with the following deadlines:

1. Defendant's production to Settlement Administrator of class-wide data: November 28, 2024;

2. Deadline for the Settlement Administrator to send original Class Notice to the Class Members via U.S. First Class Mail: December 13, 2024;

3. Deadline for Class Members to postmark written requests to exclude themselves from the settlement ("Opt-Out Requests") and objections pursuant to the original Class Notice: January 27, 2025;

4. Deadline for Settlement Administrator to provide the Parties with a complete and accurate list of objections and Opt-Out forms received: February 6, 2025;

5. Deadline for Settlement Administrator to provide Defendant with wire transfer information: Within 3 days after the Settlement becomes Final;

6. Deadline for Defendant to Transfer the Total Settlement Amount to the Settlement Administrator via wire transfer: Within 21 days after the Settlement Administrator provides Defendant with wire transfer information; and

7. Deadline for Settlement Administrator to mail settlement payments to Class Members: Within 10 days after the Settlement Administrator's receipt of settlement funds from Defendant.

To date, the Parties have received no Opt-Outs and no objections [See Ex. 2, Settlement Administrator's Declaration, ¶ 9], suggesting that 100% of Class Members would like the settlement to proceed. objection.

Pursuant to the Court's Order Preliminary Approval Order, any "objections shall indicate whether the Class Member intends to appear at the final approval hearing. Class Members who fail to indicate that they intend to appear at the final approval hearing shall not be heard at the final approval hearing." (Docket No. 102, ¶ 11) Class Members were apprised of, via the Notice, the requirements to be heard at the final approval hearing. Again, there have been no objections to the settlement at all. As a result, no Class Member is expected to appear or be heard at the final approval hearing.

### III.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

The Settlement Agreement was negotiated at arm's length, and the terms are favorable to all class members when compared with the potential benefits and risks of further litigation. Therefore, the Parties request that the Court grant final approval of the Settlement.

### A. The Settlement Is Fair, Reasonable and Adequate, and Final Approval Is Warranted.

The Settlement was negotiated at arms' length, and the terms are favorable to all class members when compared with the potential benefits and risks of further litigation. See *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010). For FLSA purposes, the Court must consider "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching. *Id.* The following factors are to be considered:

> (1) [T]he complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation.

*Id.*

Under Federal Rule of Civil Procedure 23(e)(2), the Court may approve a class action settlement if "it is fair, reasonable, and adequate[.]" As one district court within the Seventh Circuit recently articulated:

> In assessing a settlement's fairness, "relevant factors include: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) [the] stage of the proceedings and the amount of discovery completed."

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, MDL No. 2492, 2016 WL 305380, at *6 (N.D. Ill. Jan. 26, 2016) (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)).  Federal courts naturally favor the settlement of class action litigation. *See EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-889 (7th Cir. 1985) (noting "the general policy favoring voluntary settlements of class action disputes") (citations omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.") (citations omitted); *see also* WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 13.1 (5th ed. Supp. 2015) (noting that there is "a 'strong judicial policy in favor of class action settlement'"); *id.* at § 13.44 ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.  Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation.").

In the present case, the Settlement meets the fairness requirements for multiple reasons. First, for more than two years prior to attending successful Settlement Conference and entering into the Settlement, the Parties engaged in significant exchange of documents and information, including data pertaining to Class Members, conducted numerous depositions and engaged in numerous discussions regarding the merits of the claims and defenses.  This enabled the Parties to determine the scope of potential damages and to assess the strengths and weaknesses of their respective positions.  *See Chapman*, 2015 WL 9478548, at *7 (in granting preliminary approval of settlement, noting that "[t]he litigation has been pending for six months, during which time, the parties were able to assess the strengths and weaknesses of their respective positions.").

Plaintiff believes she has a strong claim made based on the allegations that Defendant failed to pay Class Members for all hours worked. (Hunt Decl., ¶ 19)  Rule 23 Class Members were not paid for 15 minutes of time each shift.  The Settlement takes into account the strengths and weaknesses of the Parties' respective positions and evidence, and the difficulties in proving either side's claims and defenses.

Class Counsel estimates that the Rule 23 Class is owed approximately $128,940.00 in unpaid roll call wages and an additional $257,880 in liquidated damages under the IWPS.  The $246,827.11 total distributed to the Class Members under the Settlement reached in this case is approximately 191% of the estimated amount of unpaid roll call wages owed to Plaintiff and Class Members when applying a two-year statute of limitations. (*Id*.)  When considering the possibility of obtaining liquidated damages, the $246,827.11 total distributed to Class Members is still approximately 64% of the best possible recovery for the Rule 23 Class of $386,820.  Rule 23 Class Members will receive a settlement share amounting to approximately $20.72 per week worked during the Covered Period. For context, Class Members were paid approximately $20 per hour through the Covered Period.  FLSA Opt-in plaintiffs will receive an additional $106.12 per week worked during the Covered Paid as a result of their additional claims for deductions for lunch breaks that they never received.

Class counsel has achieved an excellent result for the Class Members, particularly in light of the risks and uncertainties associated with continued litigation.  Defendant has asserted various legal and factual defenses that were thoroughly discussed in the Rule 23 Certification Briefing.  If this case continued and Defendant were to be successful on any or all of these defenses and challenges, Plaintiff would risk obtaining no recovery for the Class Members.  Additionally, in

order to obtain an award of liquidated damages under IWPS, Plaintiff would be required to prove that Defendant acted in bad faith when failing to properly pay Class Members for all hours worked.

Second, "[c]ourts have approved settlements even though, unlike here, the benefits amounted to only a small percentage of the potential recovery." *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *5 (N.D. Ill. Oct. 10, 1995) (citations omitted); *see also Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (approving settlement of 20% of maximum possible recovery and noting courts have approved settlements amounting to 15% and 17% of maximum possible recovery) (citations omitted); *Godshall v. Franklin Mint Co.*, No. 01-CV-6539, 2004 WL 2745890, at *5 (E.D. Pa. Dec. 1, 2004) (finding proposed settlement amount of 46% of maximum possible recovery to be reasonable); *In re Newbridge Networks Sec. Litig.*, No. Civ. A. 94-1678-LFO, 1998 WL 765724, at *2 (D.D.C. Oct. 28, 1998) (agreement securing between six and twelve percent of potential trial recovery "seems to be within the targeted range of reasonableness").

Third, all involved would benefit from the Settlement as it provides a means of avoiding the reality of protracted and uncertain litigation on the issues involved in this case. Preliminary approval of a settlement is an appropriate means of avoiding these uncertainties, especially where, as here, Defendant denies liability and the Parties disagree about the merits of the case. *See Chapman*, 2015 WL 9478548, at *7-8.

Finally, adding to the reasonableness of the Settlement, "class members will obtain these benefits much more quickly than had the parties not settled," and "even if the case reached trial, the class members would not receive benefits for many years, if they received any at all." *Id.* at *7 (quoting *Swift v. DirectBuy, Inc.*, Nos. 2:11-cv-401, 2:11-cv-415, 2:11-cv-417, 2:12-cv-45, 2013 WL 5770633, at *5 (N.D. Ind. Oct. 24, 2013)).

Moreover, no one has objected to the Settlement and none of the 96 Class Members have opted out of the Settlement. Accordingly, there has been no opposition to the settlement and the reaction of Class Members has been positive.

As such, the Settlement here is fair, reasonable and adequate, and final approval is warranted.

### B. The Service Awards to The Lead Plaintiff is Reasonable and Warranted.

"Service or incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Knox v. Jones Group*, 2017 WL 3834929 *2 (S.D. Ind. Aug. 31, 2017) (citations omitted). See also *Espenscheid v. DirecSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing the importance of incentive awards). "Accordingly, incentive awards are commonly awarded to those who serve the interests of the class." *Knox*, 2017 WL 3834929, at *2, citing *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, *8 (E.D.N.Y. Nov. 20, 2012) (collecting cases). "In examining the reasonableness of the requested service award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation." *Knox*, 2017 WL 3834929 at *2, citing *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727 *16 (N.D. Ill. Feb. 28, 2012).

This $400,000.00 class and collective action settlement would not have been possible without Plaintiff Kelly R. Partlow. Ms. Partlow participated in gathering information, providing documents and information to Class Counsel, participating in planning, formal discovery, her

15

own deposition and attending two different settlement conferences, making decisions regarding the settlement, and faced the risk of a cost award against her. Without the significant work done by Ms. Partlow, the Class Members would not have benefitted from the Settlement. (Id.) The $10,000 service award agreed to by the parties and preliminarily approved by the Court are well within the realm of reasonableness of similar service awards within our Circuit. (See Order, *Trevino III, et al. v. Bremen Castings, Inc.,* Case No. 3:18-cv-00271 (N.D. Ind. Oct. 15, 2019) (Docket No. 55), approving $15,000 representative payments to plaintiffs from a gross settlement amount of $315,000; Order, *Schneider, et al. v. Union Hospital Inc.*, Case No. 2:15-cv-00204-JMS-DKL (S.D. Ind. May 9, 2017) (Docket No. 31), approving $25,000 representative payments to plaintiffs from a gross settlement amount of $2,500,000; and Entry Approving Settlement Agreement, *Bridgewater and Van Ness II, et al. v. Jadcore*, *LLC*, Case No. 2:16-cv-00060-WTL-DLP (S.D. Ind. June 7, 2019) (Docket No. 138), approving $10,000.00 representative payments to plaintiffs from a gross settlement amount of $351,296.92.)

Finally, courts regularly approve incentive awards paid from the common fund. See *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015). Plaintiff requests final approval of the service award to Lead Plaintiff Kelly R. Partlow.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff requests that the Court grant Final Approval of the Class Action Settlement Agreement, which was preliminarily approved on November 14, 2024 (Docket No. 102), grant all requested attorneys' fees, costs expenses and Lead Plaintiff's service award, and order that class funds be distributed to all participating Class Members.

Dated: February 18, 2025

Respectfully submitted,

*/s/Robert J. Hunt*_____

Robert J. Hunt (#30686-49)
Robert F. Hunt (#7889-84)
THE LAW OFFICE OF ROBERT J. HUNT, LLC
1905 South New Market Street, Suite 168
Carmel, Indiana 46032
Telephone: (317) 743-0614
Facsimile: (317) 743-0615
rob@indianawagelaw.com
rfh@indianawagelaw.com

Robert P. Kondras, Jr.
HASSLER KONDRAS MILLER LLP
100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691 Phone
(812) 234-2881 Facsimile
kondras@hkmlawfirm.com

Attorneys for Plaintiff

## *CERTIFICATE OF SERVICE*

  I certify that on February 17, 2025 a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


                /s/Robert J. Hunt
                Robert J. Hunt